24-1672 Eastern Missouri Jeffrey Joseph v. Kurt Schmiedeskamp Good morning. Are you ready? All right, Mr. Morello, we'll hear from you. It should go up a little more. It shouldn't. As Judge Arnold said yesterday, we paid a lot for that podium. I thought it would get a little higher for you. We got to amortize it, so please use it. May it please the court. I'm Adam Morello. I represent Kurt Schmiedeskamp. Kurt Schmiedeskamp is a supervisor at a metal plant in Moberly Prison. This is a prison workplace safety case. The appellee, Jeffrey Joseph, injured himself. He injured his thumb on July 20, 2018. Now, the issue here is qualified immunity. My client is entitled to qualified immunity. There's no objective. The objective element isn't met, neither is the subjective, and he wasn't deliberately indifferent. I'll begin with a couple of facts that I believe are important for the court to note. This is a voluntary position. This isn't a forced work assignment. The MVE plant where he was working on this press-based machine, it's an honor position that the prisoners all seek out. Secondly, the hand restraints, the safety devices on the machine were available for his use. There's this signed form that the prisoner, Mr. Joseph, signed right before he used the machine. It says, you've got to use these safety restraints. Can you describe how that works? It's a little hard to visualize for me. How does the hand restraint work on the machine? Well, my understanding of it is the hand restraints keep you from getting your hands pinched in the machine. It physically restrains you from getting to a position where the press brake would... Is it something you put over your hand, or is it like a guard on the machine? We don't have any exact pictures in the record, and I don't have any functional understanding. I didn't see any pictures. I was looking at the record for a picture, but didn't see one. Right. That's a deficiency in the record, but my limited understanding is it just keeps your hands from a position. I don't know whether it applies to the wrists or covers the hands. But either way, they were available. And he signed saying that he understood that you need to use the safety restraints. Now, the court found that my client wasn't entitled to qualified immunity. And the sole issue is we're here based on a singular statement plaintiff put in his declaration. When in response to a question from Mr. Joseph, Kirshman and Scamp responded, oh, we don't use them, referring to the hand restraints, because they slow production. Just don't get your hand caught in there, and we will all be okay. What was the question to which he was responding? I did not see that in the record. Okay. Go ahead. And the court didn't discuss it, but we do know it was about hand restraints. But there are two problems with this. One, this can't be deliberately indifferent as a matter of law. One, Kirshman and Scamp wasn't there. And two, this is at most a negligent statement or an inadvertent statement. This isn't knowingly compelling Mr. Joseph to use this machine. This statement can't be reasonably said to do that, and the court even notes that and notes it wasn't an explicit direction for Mr. Scamp to use this machine without the hand restraints. At most it's discouraging him to do that. Could a jury conclude otherwise, though, with the concept being we don't do that because it slows down production? Right. I don't think so here under our case law and jurisprudence because we have – they could conclude that it was maybe discouraging. They could conclude that it was a negligent conduct, but it wasn't forcing him to do it. It wasn't knowingly compelling and stating you do this or else. Well, what's he supposed to do? He's an inmate. How's he supposed to get the hand restraint? The hand restraint was available. He could have used it. He never lodged a complaint of whether he shouldn't use it. And there's two types of cases regarding workplace safety in our jurisprudence. The first type of case is the machine is – You're saying even though your client said we don't use those, he could have used it anyway? Yes. He just often said we don't use those. There's an instructional sheet that says these are available. You've got to use them. You've got to be instructed to use them before, and he signed saying that he would use it. I know, but he's saying then the supervisor told me we don't use them. Right. He's saying we don't – the statement is we don't use them. Right. Just don't get your hand caught in there and we'll be okay. So it's this inadvertent comment not made on the day of the injury. But most of these workplace safety cases, there are two types of cases. There's one where the machine is broken. This is the Colquet case and the Bibbs case. There's some safety guard missing, and the accusation is that the prison official didn't have knowledge and then therefore constitutes deliberate indifference. That's not what we have here. What we have here is the workplace safety, the machine had the safety guards and the machine had the training and the signature, but the claim is that he was compelled to work. And that knowingly compels standards higher. In our case law, for example, every case, the prison official was one, they were there. Two, the prisoner said, I don't want to do this. This isn't a work condition I want to be in. And three, the prison official forced them to do the work anyway, ordered them to do the work anyway. And notable is the Fruit v. Norris case, and that's not in the brief, but I want to bring it to the court's attention because it's a good example where it's a sewage, the prisoners were forced to work without protective gear in essentially a sewer, a sewage area. And they complained about it and they were forced to do it anyway, or they refused to work rather, and they were disciplined for it. And similarly, in another case, East v. Lemon, again, the prisoner complained about the work. He said, I can't do this, I'm getting cramps, it's hurting me, and he was ordered to do it anyway. There's no such order here. So I think for our jurisprudence that it's important to note with deliberate indifference it's a high standard. This is approaching actual intent. And there's no actual intent here that this was Mr. Schmiedes' camp, violating the Eighth Amendment and giving this order to punish him in an area that he otherwise wouldn't. And these line of cases also point to the fact that this particular conduct isn't clearly established here yet in this circuit court. Every case, the prison official is there. Every case, the prisoner complained before he was forced to do the work he otherwise wouldn't have done with a safety issue. It's not enough to simply have an offhand comment. And so I don't believe this meets the clearly established prong either. The court can decide in either order clearly, but there must be a case law, some sort of robust, persuasive amount of cases. Even the case that Mr. Joseph cites in his brief, the Ambrose case. The Ambrose case was a safety issue that the inmates complained about. There was a downed power line that they didn't want to go work on, and there was a fire. And the prison official said, go stomp out that fire. So again, we have this pattern of complaint, forced to do it anyway, and then there's harm. Here we don't have those. The district court seems to have taken a rather broad view, cast a rather broad net when it discussed what the established right was. It seems to me the analysis might have been a little more focused on the circumstances, whether there was clearly established law in the circumstances that this was a constitutional violation. And I'm wondering, there was some reference to compulsion cases, but you've already said your position is this is really not a compulsion case. Is that right? Well, argument is it is a compulsion case, and it has to be because there weren't safety issues with the press brake machine. But our other argument is that the analysis of the clearly established problem was wrong because it didn't take into context the specific facts of the case. In the Supreme Court in this circuit. Which didn't involve compulsion, right? Correct. Okay, that's what I meant. Okay, I apologize. You said it's a compulsion case, but you're really saying it wasn't compulsion. Well, it's a compulsion case, but we're saying that this statement, he wasn't knowingly compelled to do the work. I'm sorry if I'm confusing the court. I apologize. Thank you for your argument. Yes, Your Honor. Thank you. Ms. Martin, we'll hear from you. May I please the court? My name is Nancy Martin. I represent Jeffrey Joseph, plaintiff in the underlying case, appellee here. Mr. Morello. I'm sorry, counsel. I'm having a little trouble hearing you. I beg your pardon. Yes, sir. Thank you very much. Again, my name is Nancy Martin. I represent Jeffrey Joseph, the plaintiff in the underlying case, appellee in this matter. And Mr. Morello addressed several different issues, and I'll try to address them in the same sequence. He mentioned that Mr. Joseph's position with the metal plant was a voluntary position, therefore there could be no consideration of compulsion here. I agree with Your Honors in your reference that how could this be a voluntary position if he was an inmate? Well, that was just a question. Yes, I understand that's just a question on your part. But I would refer the court to the resignation letter, which was included in the appellant's appendix on page 108, which indicates that Mr. Joseph did not have the unilateral right to decline working. He had to have a job. At the time of the injury, this was his job. Therefore, he didn't have the option of not performing the work that was assigned to him. And according to the record, that work was assigned to him by defendant Schmiedeskamp. Secondly, Mr. Morello indicated that they rely heavily on this contention that hand restraints were available for his use. However, I think the record clearly shows that Mr. Schmiedeskamp discouraged their use. There was never any training in their use. There was, in fact, more or less an implicit command not to use the safety restraints, and he gave the reason why. It was because it slowed production. The supervisors at the plant expected the inmates to finish their day early. And in order to be able to do that, they essentially required them to bypass security devices that would slow down the production. So regardless of whether hand restraints were, in fact, available, they were not permitted to be used. Thirdly, the defendant relies heavily on signed safety device forms. But if you read the forms, even if we agree that Mr. Joseph, in fact, signed it every day he went into work, and even if he indeed did read them, the forms say nothing in terms of what are the safety devices, where can you find instruction on how to use them, where are the warnings, what are the risks. There's nothing to that effect in any of the forms that the defendant required his workers to sign. In fact, I think a reasonable juror could infer that his insistence on having them sign that daily without providing them any training on safety devices and instructing them not to, really only shows that he was worried about his own liability and was probably hoping that that form would save him from it. Fourthly, Mr. Morello indicates that this case just hinges on one singular statement of Mr. Schmiedes' camp. In response to Mr. Joseph, his inquiry about safety. Where are the safety devices? How do you use the hand restraints? But that's not the whole case. The other facts in the record show that we're dealing with a press brake machine that operates at 450,000 pounds of force to bend metal. We also know that according to the admissions by the defendants, Mr. Joseph had to place his fingers within three-quarters of an inch from the point of operation, from the pinch point, from the place where the upper ram comes down and forms the less than four-inch square piece of metal that he was producing that day. Another point that was mentioned in the record is that the supervisors provided crushable pliers so that any worker would not have to come that close to the point of operation. However, again, admissions in the record show, admissions by the defendants, that those crushable pliers were not made available until four months after the injury. Doesn't the admission on which you rely by Schmiedes' camp show that he thought subjectively that the machine could be operated safely without the guards? You know, I think a reasonable juror would rather infer that a person in his position, supervisor of the plant, required to implement training to supervise, and who has his desk directly in front of the press brake machines, and in particular the one that was at issue in this case, I think a reasonable juror would find that certainly he knew of the risks and he disregarded them deliberately for sake of expediency. I think that there is no other way to interpret the facts of this case. Did that answer your question, Your Honor? Maybe not. You said earlier that the inmates were prohibited from using the safety devices. Other than the statement that we've been talking about, is there other evidence of that? Other inmates say we were told we couldn't use it? I would say yes because the video evidence shows there were no safety devices in or around that machine. And the expert that we retained to review that video footage indicated in his report that there were no hand restraints visible or in use. Furthermore, there were no warnings placed. That's additional evidence in support of the contention that they prohibited their use. They were available, but what does that really mean? Did they say they are attached and on the right and left-hand side of the operator's buttons? I mean, they didn't indicate what does available mean. And I think considering the totality of the evidence, a reasonable juror would not infer that available under this circumstance means right in front of him for his use. And even if they were, he had no training in how to use them to prevent this injury. Next, there was this contention that Mr. Schmiedeskamp could not have compelled my client, Mr. Joseph, to perform the operation that day on the machine because Mr. Schmiedeskamp was not present. However, he was charged with the duty of creating the assignments, implementing the assignments, regardless of whether he was present or not. He's the one who gave this assignment to Mr. Joseph to perform, not anybody else. And the record shows that. Would your honors have any other questions for me? Yeah. Mr. Morello makes the point that this is supposed to be a high standard. And a lot of the things you were mentioning, failure to train and that kind of thing, kind of smells of negligence or maybe even gross negligence. Do you think this gets to the level of criminal recklessness? I do, your honor, because the statement from Mr. Schmiedeskamp includes the implicit contention that he wants the operator to use the machine without safety devices for a reason. Not because he's negligent and doesn't really realize how dangerous it is. No, it's because he wants the job to be done fast. He wants to end the day early. Considering all the circumstances, I think it's reasonable to infer, and a reasonable juror would do this, that there has to be another reason behind why he would want to end that day so soon. Why he wants to bypass simple safety for a machine that operates at multi-tons of force. I mean, people die without using safety devices because of these machines. So considering the extreme seriousness of the danger, I think that offsets the, I guess you could call it, the burden of showing how knowledgeable, how deliberate did he need to be. And in this case, I think the circumstances show that a reasonable juror would find that Mr. Schmiedeskamp was deliberately indifferent to my client's health and safety, and the appellant's appeal should be denied. Thank you, Your Honor. Thank you. Thank you for your argument. Mr. Morello, I think your time has expired. I do too. Very well. Do you have any other questions, Your Honor? Well said. Thank you. Thank you for your argument. I appreciate the court. Thank you to both counsel. The case is submitted, and the court will file a decision in due course.